24-1988
*Sudakow v. CleanChoice Energy, Inc.*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2024
Argued:  March 21, 2025
Decided: August 27, 2025

No. 24-1988-cv

---

JOANNE SUDAKOW, ON BEHALF OF HERSELF
AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellee,*

ERIC WEINBERG, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff,*

*v.*

CLEANCHOICE ENERGY, INC.,

*Defendant-Appellant.*[*]

---

Appeal from the United States District Court
for the Southern District of New York
No. 7:23-cv-9685
Philip M. Halpern, *Judge.*

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

Before:        CARNEY, PARK, and KAHN, *Circuit Judges*.

Joanne Sudakow contracted to purchase electricity from CleanChoice Energy, Inc.   About three weeks afterwards, CleanChoice sent a package containing a form with new dispute-resolution terms, including an arbitration provision, which Sudakow did not sign.  Two years later, Sudakow sued CleanChoice for breach of contract and deceptive business practices.  CleanChoice moved to compel arbitration based on the subsequent terms.  The district court (Halpern, *J.*) denied the motion, finding that Sudakow did not have notice of the arbitration provision.  On appeal, CleanChoice argues that Sudakow had inquiry notice of the subsequent terms and implicitly assented to those terms by making service payments.  We reject both arguments.  Sudakow lacked inquiry notice because CleanChoice failed to present the arbitration provision in a clear and conspicuous way, and a reasonable person would not have believed that submitting payments constituted assent.  The judgment of the district court is **AFFIRMED**.

————

D. GREGORY BLANKINSHIP, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, White Plains, NY (J. Burkett McInturff, Jessica Hunter, Daniel J. Brenner, Wittels McInturff Palikovic, Armonk and New York, NY, *on the brief*), *for Plaintiff-Appellee.*

MICHAEL D. MATTHEWS, JR. (Diane S. Wizig, Justin R. Chapa, *on the brief*), McDowell Hetherington LLP, Houston and Arlington, TX, *for Defendant-Appellant.*

————

2

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

PARK, *Circuit Judge*:

Joanne Sudakow contracted to purchase electricity from CleanChoice Energy, Inc. About three weeks afterwards, CleanChoice sent a package containing a form with new dispute-resolution terms, including an arbitration provision, which Sudakow did not sign. Two years later, Sudakow sued CleanChoice for breach of contract and deceptive business practices. CleanChoice moved to compel arbitration based on the subsequent terms. The district court (Halpern, *J.*) denied the motion, finding that Sudakow did not have notice of the arbitration provision. On appeal, CleanChoice argues that Sudakow had inquiry notice of the subsequent terms and implicitly assented to those terms by making service payments. We reject both arguments. Sudakow lacked inquiry notice because CleanChoice failed to present the arbitration provision in a clear and conspicuous way, and a reasonable person would not have believed that submitting payments constituted assent. The judgment of the district court is affirmed.

## I. BACKGROUND

A.    <u>Factual Background</u>

CleanChoice is an energy company that offers customers variable electricity rates. In September 2021, Joanne Sudakow received a direct mailer inviting her to enroll in CleanChoice's program. The mailer contained two copies of a contract (the "Enrollment Agreement") and an enrollment authorization form (the "Enrollment Form").

3

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

Three provisions of the Enrollment Agreement are relevant here. First, a clause designating New York as the exclusive "[v]enue for any lawsuit brought to enforce any term of condition of th[e] Agreement." App'x at 91. Second, a unilateral-modification clause giving CleanChoice "the right to modify th[e] Agreement" in the event of a "Regulatory Change"—defined as "a change in any law, rule, regulation, tariff, or regulatory structure . . . which impacts any term, condition or provision of th[e] Agreement"—so long as CleanChoice provides "30 days' written notice of such modification." *Id.* And third, an integration clause confirming that the "[d]ocuments constitute the entire Agreement between Customer and CleanChoice." *Id.* Neither the Enrollment Agreement nor the Enrollment Form contained an arbitration clause.

In October 2021, Sudakow submitted the signed Enrollment Form, checking a box to affirm that she had "reviewed and accept[ed] the enclosed terms and conditions."[1] App'x at 94. According to CleanChoice's records, her enrollment became effective on November 9, 2021.

On November 17, 2021, CleanChoice mailed Sudakow a "Welcome Package." It arrived in an envelope bearing Sudakow's address, a return address, and the words "[i]mportant information regarding your new clean electricity subscription." App'x at 266. Inside the envelope were a two-page cover letter, a five-page form (the "Subsequent Terms"), and a copy of New York State Public Service Commission's "[Energy Services Company] Consumers Bill

---

[1] Although Sudakow did not sign the Enrollment Form herself, she directed her husband—Robert Sudakow—to sign it on her behalf.

4

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

of Rights." *Id.* at 257-66.  The cover letter welcomed Sudakow to the program but made no mention of the enclosed Subsequent Terms. And neither the cover letter nor the Subsequent Terms prompted Sudakow to sign her name, which she did not do.  The Subsequent Terms provided:

> [B]y signing this Agreement, You agree to initiate electricity supply service and to begin enrollment with CleanChoice Energy.
>
> . . .
>
> **Complaint/Dispute Procedures**
>
> If You have any questions, concerns or complaints about Your bill, please contact Us by calling our Customer Care Representatives.
>
> **Dispute Resolution**
>
> The services provided by CleanChoice to Customer are governed by the terms and conditions of this Agreement . . . . In the event of a billing dispute or a disagreement involving CleanChoice, contact Us . . . . For consumer complaints that cannot be resolved with the company, you may contact the New York Department of Public Service.
>
> . . .

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

**Choice of Laws**

> This Agreement will be governed by the laws of the state
> of New York . . . . Both You and CleanChoice Energy
> agree irrevocably and unconditionally to settle any
> actions, complaints or disputes . . . under the rules of the
> American Arbitration Association (AAA).  It is further
> agreed that arbitration will only be pursued on an
> individual basis . . . . Venue for any arbitration brought
> to enforce any term or condition of this Agreement will
> lie exclusively in New York.

App'x at 260, 262, 264.

CleanChoice supplied electricity to Sudakow's home from
December 2021 until August 2022, when Sudakow terminated her
service.

B.    <u>Procedural History</u>

In November 2023, Sudakow filed a putative class-action
complaint, seeking injunctive relief and compensatory and statutory
damages.  According to Sudakow, CleanChoice breached its contract
by charging "variable rates for electricity that were untethered from
the factors upon which the parties agreed."  App'x at 73.  The
complaint alleged that CleanChoice violated New York law by
engaging in false advertising and deceptive business practices.  *See id.*
at 75-88.

CleanChoice moved to compel arbitration.  The district court
denied the motion, finding that Sudakow "did not have sufficient
notice of [the] terms and conditions or an opportunity to assent" to
the arbitration clause in the Subsequent Terms.  *Weinberg  v.*

6

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

*CleanChoice Energy, Inc.*, No. 23-CV-09685, 2024 WL 3446515, at *7 (S.D.N.Y. July 17, 2024).  CleanChoice timely appealed.  *See* 9 U.S.C. § 16(a)(1)(B).[2]

## II.  DISCUSSION

CleanChoice argues that the district court erred in denying its motion to compel arbitration because Sudakow (1) had inquiry notice of the Subsequent Terms and (2) implicitly assented to the Subsequent Terms by continuing to pay her electrical bills.  Both arguments fail.

A.    Legal Standards

"On appeal, a district court's denial of a motion to compel arbitration is reviewed *de novo*.  The question of whether the parties have agreed to arbitrate is also reviewed *de novo* to the extent that the district court's conclusion was based on a legal determination, but findings of fact, if any, bearing on this question are reviewed under a clearly erroneous standard."  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118-19 (2d Cir. 2012) (cleaned up).  "[W]hen deciding motions to compel, we . . . draw all reasonable inferences in favor of the non-

---

[2] The district court granted the motion to compel arbitration as to another plaintiff, Eric Weinberg, who had confirmed on a phone call with a CleanChoice representative "that he understood that the terms and conditions would be mailed to him."  *Weinberg*, 2024 WL 3446515, at *5.  The district court also granted CleanChoice's motion to dismiss Sudakow's husband, who lacked Article III standing because the Enrollment Agreement "specifically stated 'there are no third party beneficiaries to this Agreement'" and, in any event, "Plaintiffs [did not] argue that Mr. Sudakow is a third-party beneficiary of the agreement."  *Id.* at *8 (cleaned up).

7

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

moving party." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) (cleaned up).

The Federal Arbitration Act of 1925 "does not require parties to arbitrate when they have not agreed to do so." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks omitted). So "a court must first decide whether the parties agreed to arbitrate" before enforcing any such agreement. *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel*, 697 F.3d at 119. Here, the Enrollment Agreement specifies that it is governed by the laws of New York.

B.   <u>Inquiry Notice of the Subsequent Terms</u>

CleanChoice first argues that Sudakow is bound by the arbitration provision in the Subsequent Terms because she had inquiry notice of those terms. We disagree.

"Under New York law, when an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115-16 (2d Cir. 2025) (quotation marks omitted). "In determining whether an offeree is on inquiry notice of contract terms, New York courts look to whether the term was obvious and whether it was called to the offeree's attention." *Zachman*, 49 F.4th at 102 (quotation marks omitted). "Insofar as it turns on the reasonableness of notice, the enforceability of a[n] . . . agreement is clearly a fact-intensive inquiry." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).

8

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

As an initial matter, the district court correctly concluded that the Enrollment Agreement was a binding contract, effective November 9, 2021.[3] So the Subsequent Terms can bind Sudakow only with actual or inquiry notice that they supersede the Enrollment Agreement. CleanChoice provides no evidence of actual notice. But "[w]here an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). We thus turn to the question of whether Sudakow had inquiry notice of the arbitration provision.

This Court addressed inquiry notice of later-terms contracting in *Schnabel*. The plaintiffs in that case enrolled in a discount club that charged a monthly fee. After enrollment, the discount club emailed the plaintiffs a document containing "Terms and Conditions." *See Schnabel*, 697 F.3d at 116-17. When the plaintiffs later sued over allegedly deceptive business practices, the discount club moved to compel arbitration on the basis that the Terms and Conditions contained an arbitration provision. The district court denied the motion.

---

[3] CleanChoice asserts that the Enrollment Agreement was merely a "marketing disclosure summarizing the proposed terms and conditions of the electricity supply agreement." Appellant's Br. at 6. But that argument is meritless. The Enrollment Agreement held itself out as an "agreement between CleanChoice . . . and the undersigned customer." App'x at 91. And it contained detailed contractual provisions, including a pricing scheme, a dispute-resolution clause, and a consumer-privacy policy. *See id.* at 91-92.

9

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

We affirmed.  The fact that "someone has received an email," we explained, "does not without more establish that he or she should know that the terms disclosed in the email relate[d] to a service in which he or she had previously enrolled." *Schnabel*, 697 F.3d at 126. And the emailed arbitration provision at issue was "delivered after initial enrollment" and in a way that did not "force[]" the plaintiffs "to confront the terms while enrolling in or using the service or maintaining their memberships." *Id.* at 127.  We thus concluded that "a reasonable person would not be expected to connect an email that [she] may not actually see until long after enrolling in a service (if ever) with the contractual relationship . . . she may have with the service provider." *Id.*

Applying *Schnabel* here, we conclude that Sudakow lacked inquiry notice of the arbitration provision.  First, the later-sent arbitration provision, like the email in *Schnabel*, was "temporally and spatially decoupled" from Sudakow's enrollment in the service. *Schnabel*, 697 F.3d at 127.  It arrived unannounced, weeks after Sudakow executed her contract.  And nothing in the Enrollment Agreement itself called attention to the possibility of any such forthcoming change.  Accordingly, a reasonable person would not have understood that the Subsequent Terms altered her contract with CleanChoice.

Second, CleanChoice did not present the arbitration provision in a "clear and conspicuous way." *Zachman*, 49 F.4th at 102 (quotation marks omitted).  The Welcome Package arrived in a nondescript envelope that did not identify CleanChoice as the sender. *See* App'x at 266.  It contained a cover letter that described the company's focus

10

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

on "reducing your carbon footprint and supporting jobs in the clean energy industry" and did not mention the enclosed Subsequent Terms. *See id.* at 257-58. And it obscured the existence of the arbitration provision by placing it within the "Choice of Laws"—as opposed to the "Complaint/Dispute Procedures"—section of the Subsequent Terms.[4]  *See id.* at 262, 264. CleanChoice thus failed to "raise[] a red flag vivid enough to cause a reasonable person to anticipate the imposition of a legally significant alteration to the terms and conditions." *Schnabel*, 697 F.3d at 127 (cleaned up).

CleanChoice maintains that *Schnabel* is inapposite. In its view, *Schnabel* is "a factually dissimilar e-commerce case" involving plaintiffs who "were unaware that they had even contracted . . . until long after they were sent an arbitration provision via email," whereas Sudakow received a "hard-copy contract" and "knowingly enrolled with CleanChoice and authorized it to use the address to which it mailed her Contract." Appellant's Br. at 20. But even though Sudakow—unlike the plaintiffs in *Schnabel*—was aware that she had contracted, she had no reason to expect that CleanChoice would seek to amend their contract just weeks after it was signed. Moreover, *Schnabel* did not turn on the method of delivery. The "touchstone" of its inquiry-notice analysis—*i.e.*, "whether reasonable people in the position of the parties would have known about the terms"—applies with equal force to emails and hardcopies alike. *Schnabel*, 697 F.3d at

---

[4] To be sure, the location of an arbitration provision in a document is not itself a dispositive "barrier to reasonable notice." *Meyer*, 868 F.3d at 79 (quotation marks omitted). But in determining reasonable notice, courts account for whether an arbitration provision is "conspicuous in the context" of the document in which it appears. *Soliman*, 999 F.3d at 835.

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

124; *see Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.").

To distinguish *Schnabel*, CleanChoice invokes "principles from traditional contract cases." Appellant's Br. at 21. But those principles confirm that CleanChoice failed to put Sudakow on inquiry notice. The Enrollment Agreement was a complete contract "constitut[ing] the entire Agreement between [Sudakow] and CleanChoice." App'x at 91. And it specified that unilateral modifications required "30 days' written notice" and a "[r]egulatory [c]hange. . . impact[ing] any term, condition or provision of th[e] Agreement." *Id.* This provision did not put Sudakow on notice that CleanChoice anticipated providing different terms in less than a month—and in fact suggested the exact opposite. So based on the Enrollment Agreement, Sudakow would have had no reason to expect a mailing from CleanChoice containing a superseding agreement.

Finally, CleanChoice claims that it established inquiry notice by providing "affidavits as to its regular office mailing procedures showing that mail containing the . . . contract was properly addressed and delivered to the U.S. Postal Service." Appellant's Reply Br. at 9 (cleaned up). But New York's mailbox rule merely creates a presumption that papers were "received" at a party's address. *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985). And "cases applying the duty to read principle to terms delivered after a contracting relationship has been initiated do not nullify the requirement that a consumer be on notice of the existence of a term before he or she can

12

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

be legally held to have assented to it." *Schnabel*, 697 F.3d at 124 (quotation marks omitted). Here, CleanChoice does not show any "basis for imputing to [Sudakow] knowledge" of the Subsequent Terms. *Register.com*, 356 F.3d at 402.

C.    Assent to the Subsequent Terms

CleanChoice next argues that Sudakow "implicitly assented" to the arbitration provision. Appellant's Br. at 40. We need not consider that argument because Sudakow lacked inquiry notice. But even if Sudakow had inquiry notice, CleanChoice's implicit-assent theory fails.

"The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke*, 913 F.3d at 289. "[A]cceptance need not be express, but where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound." *Schnabel*, 697 F.3d at 128.

Here, the Subsequent Terms specified that "by *signing* this Agreement, You agree to initiate electricity supply service and to begin enrollment with CleanChoice Energy." App'x at 260 (emphasis added). Moreover, the Subsequent Terms referred to "the *undersigned* customer." *Id.* (emphasis added). Such language would leave a reasonable consumer to conclude that assent can be manifested only through a signature.

Still, CleanChoice argues that Sudakow assented to the Subsequent Terms by making "monthly payments in response to

13

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

receiving a monthly bill." Appellant's Br. at 37. But those payments cannot be mistaken for assent. In *Schnabel*, "continued credit-card payments . . . were too *passive* for any reasonable fact-finder to conclude that they manifested a subjective understanding of the existence of [later-sent] arbitration . . . provisions and an intent to be bound by them." 697 F.3d at 128 (emphasis added). And that was because the plaintiffs did not "know[] or ha[ve] reason to know" that the discount club would infer assent from such conduct. *Id.* at 120.

So too here. The Enrollment Agreement contemplated unilateral modifications only in select circumstances, none of which applies in this case. CleanChoice makes no argument that the bills themselves alerted Sudakow to the arbitration provision. And Sudakow paid her bills as part of her obligations under the Enrollment Agreement, not to signal an acceptance of new terms. A reasonable person would not understand the act of mailing scheduled payments to constitute assent.

"[U]nder New York law, silence constitutes assent only in particular circumstances, such as where there is a duty to respond or where there is a contemporaneous oral agreement." *Schnabel*, 697 F.3d at 128 (summarizing discussion in *Karlin v. Avis*, 457 F.2d 57, 61-62 (2d Cir. 1972)). There was no such duty or oral agreement here. Sudakow never signed the Subsequent Terms and had no reason to believe that CleanChoice expected her either to cancel her service or to agree to arbitrate. So her "failure to act affirmatively" did not "carry a significance that reasonable people in the parties' positions would understand to be assent." *Id.*

14

24-1988
*Sudakow v. CleanChoice Energy, Inc.*

## III.  CONCLUSION

We affirm the judgment of the district court denying
CleanChoice's motion to compel arbitration.